Filed 5/23/22  P. v. Nava CA5
(unmodified opinion attached)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO ANTONIO NAVA,<br><br>Defendant and Appellant. | F080965<br><br>(Super. Ct. No. VCF361905C)<br><br>**ORDER MODIFYING OPINION**<br>[No Change in Judgment] |

**THE COURT:**

It is ordered that the opinion filed herein on May 2, 2022, be modified as follows:

1.  On page 2, the sixth sentence in the first paragraph beginning "He saw the black car" is modified to read as follows:

> He saw the black car on the left side of his car and the back passenger window rolled down.

2.  On page 9, the fifth sentence in the first full paragraph beginning "In addition, both predicate offenses" is deleted and the following sentences are inserted in its place:

> In addition, the last of the predicate offenses must have "occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed." The predicate offenses must have been committed by gang "members," and must have been for the "common[] benefit[] [of] a criminal street gang."

3.  In the paragraph commencing at the bottom of page 11 and ending on page 12, the third sentence beginning "Neither predicate offense" is modified to read as follows:

> The last predicate offense did not occur within three years of the date the currently charged offense was committed—February 3, 2018—as required by amended section 186.22.

4.  On page 12, the words of the first sentence of the first full paragraph—"Excluding evidence of these offenses,"—are deleted and the word "Accordingly," is inserted in their place.

Except for the modifications set forth, the opinion previously filed remains unchanged.  There is no change in the judgment.

PEÑA, Acting P. J.

WE CONCUR:

SMITH, J.

DE SANTOS, J.

2.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO ANTONIO NAVA,<br><br>Defendant and Appellant. | F080965<br><br>(Super. Ct. No. VCF361905C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Gillian Black, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Robert K. Gezi, Darren K. Indermill, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Francisco Antonio Nava and three codefendants—Robert Ramos, Stephen Lopez, and Ruben Perez—engaged in a confrontation at a convenience market with E.D. and his girlfriend, C.A. They yelled rival gang slurs at E.D.; Lopez and Perez threw drinks into E.D. and C.A.'s car; and Lopez grabbed E.D.'s shirt and struck him in the back of the head, scratching his neck. Perez also tried to grab E.D. E.D. drove away. When E.D. stopped at an intersection, he saw a black car speeding toward him, heard two gunshots and glass breaking, and felt an impact on his car. He saw the black car on the left side of his car and a man pointing his hand out of the back passenger window.

The four defendants were charged with multiple offenses in relation to the incident. At trial, the prosecution presented expert testimony on criminal street gangs, evidence of the defendants' prior contacts with police, and certified records of convictions of Norteño gang members as proof of a pattern of gang activity to prove the street gang enhancements.

The jury acquitted the four defendants of attempted murder of E.D. and C.A. (counts 1 and 2, respectively) and was deadlocked on the lesser included offense of attempted voluntary manslaughter. The jury convicted all four defendants of shooting into an occupied motor vehicle in violation of Penal Code section 246 (count 3) and found true allegations a principal used a firearm (§ 12022.53, subds. (c) & (e)(1)) and that the offense was committed for the benefit of a criminal street gang (former § 186.22, subd. (b)(1)(C)). The jury was deadlocked as to all four defendants on count 4, criminal street gang conspiracy in violation of section 182.5. The jury convicted Lopez and Perez of battery in violation of section 242 in count 5 and found the offense was committed for the benefit of a criminal street gang (former § 186.22, subd. (b)(1)(C)). The jury convicted Lopez of possession of a firearm by a convicted felon in violation of section 29800, subdivision (a)(1) (count 6). (Undesignated statutory references are to the Penal Code.)

2.

Nava argues the court erred in imposing both the firearm enhancement and the gang enhancement even though it stayed the former. He further challenges the validity of the gang enhancement and firearm enhancement under Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which, in part, amended the language of section 186.22 to modify the showing necessary to sustain a gang enhancement. Nava asserts the changes enacted by Assembly Bill 333 are retroactive and, accordingly, his gang enhancement should be reversed and retried under the new requirements of section 186.22.

We agree Assembly Bill 333 applies retroactively and Nava is entitled to reversal of his gang enhancement and firearm enhancement on that basis. In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

### February 3, 2018 Incident

In the evening of February 3, 2018, E.D. was at a convenience market with his girlfriend C.A.; E.D. was wearing a navy blue shirt. They met E.D.'s parents for dinner. E.D. testified Nava and his codefendant Ramos approached E.D. when he was at the register checking out, though other evidence introduced suggested Ramos did not enter the store.[1] Nava said, "'What's up Ene?'" E.D. smiled and said "What's up?" E.D. walked out of the store toward his car; Lopez and Perez followed him and said, "'Fuck Sur trece.'" E.D. understood the statement to mean "disrespect toward the Southerner gang." E.D. testified all four defendants continued to holler disrespectful Southern gang slurs while E.D. and C.A. walked toward his car. E.D. and C.A. got in the car and reversed; E.D. saw Nava and Ramos talking to his mother as she was trying to get in her car. E.D. testified his car had a Los Angeles Dodgers logo decal on it; he and C.A.

---

[1]C.A. identified Nava and Lopez as the individuals who approached E.D. inside the store and Perez and Ramos as the individuals who approached when they were outside the store. Officer Michael Elliot also testified the video surveillance footage did not depict Ramos entering the store at any time.

denied any gang involvement. E.D. rolled his window down halfway to tell them he did not want any problems but, before he could, Lopez and Perez threw drinks into E.D.'s car. Lopez then grabbed and scratched E.D.'s neck; Perez tried to grab E.D., too. E.D. drove off. He saw Lopez and Perez running to their car, a black four-door sedan, as he left. He told C.A. to call 911 as he turned onto the road from the driveway. He could see the defendants' car in his rear view mirror as they exited from the same driveway.

E.D. got in the far right lane. The defendants pulled up behind E.D.'s car and then next to it. E.D. then heard glass breaking, tires screeching, and two gunshots; he felt the impact of a bullet on his car. E.D. and C.A. saw the rear passenger side window of the defendants' car rolled down. E.D. drove back to the convenience market and he and C.A. waited for the police.

The manager of the convenience market gave the police the surveillance videos from that day. Officer Elliot identified Ramos, Perez, Nava, and Lopez in the video shown at trial.

### Gang Expert Testimony

Before trial, Perez moved to bifurcate the gang allegations. The court noted it would treat the objection as a joint challenge by all the defendants. The court considered the motion and tentatively denied it because the gang allegations and underlying charges overlapped. The prosecutor argued the gang evidence was intertwined with the charges, motive, and intent and substantive evidence of it would come in with regard to the section 182.5 charge. The court noted it intended to allow the gang expert to testify about the foundational components and opinions regarding the gang allegations and asked for comments from the parties; no objections or comments were made. The court explained to the prosecutor that, with the *Sanchez* [*People v. Sanchez* (2016) 63 Cal.4th 665] issue, she was going to have to "prove … up individually … with witnesses."

Officer Joel Arjona, who was assigned to the Tulare Area Regional Gang Enforcement Team in February 2018, testified as a gang expert. He discussed his

4.

experience working with gangs and how the Norteño and Sureño gangs are structured. He explained both gangs have symbols and signs they use to reflect their affiliation. Norteño gang members associate with the number 14 and the color red. They use the huelga bird as a symbol of the gang. Sureño members use the color blue to represent the gang and associate with the number 13. Arjona explained the Norteño gang derives from the prison gang Nuestra Familia. Local street gang members of the Norteño gang report to an individual called a "channel." The "channel" then reports up to a member of Nuestra Familia who is in charge of the county. He testified Norteño members pay "taxes" that are used for the benefit of the gang. The Norteño gang has different cliques or subsets that all identify with the color red and the number 14. Members of different subsets work together, communicate with one another, commit crimes together, and share information and weapons. He discussed the subset North Side Visa Boys (or NSVB) and explained the symbols and tattoos they use to identify themselves. He stated all NSVB members are in Tulare County.

He explained what he deemed to be "primary activities of the Norteño gang" based on his investigations and reports and from speaking to other officers and gang members. The primary activities are a lot of crimes, 33 of which the Penal Code considers "gang crimes." The list of gang crimes includes, but is not limited to, auto theft, possession of firearms, murder, attempted murder, assault, assault with deadly weapons, kidnappings, burglary and vandalism.

Officer Arjona testified regarding two specific predicate crimes. He discussed the murder of John Hernandez committed by Norteño gang members Jacob Robles and Julian Gonzalez at the direction of Joe Dominguez, another gang member, on May 19, 2010. Officer Arjona was familiar with the case through his research. Counsel for Nava objected on "foundation" grounds when the prosecutor asked whether Officer Arjona had an opinion as to whether the murder fits "the pattern of Norteño street gang activity … in Tulare County." The court overruled the objection. Based on his training and

experience, speaking with other officers, and reading reports, Officer Arjona testified he believed gang member Joe Dominquez directed the two other gang members to kill the victim, who was a gang dropout. The prosecutor then introduced a certified copy of the murder conviction from that case, *People v. Julian Gonzalez*, No. VCF241993, conviction date May 15, 2012.

Officer Arjona then testified regarding an attempted murder that occurred at the Visalia Mall on January 27, 2012, by Adrian Esquer and Anthony Hanson. Arjona was not on duty at the time but he researched the incident after the fact and "it was a gang crime." Based on his conversations with the primary detective, study of the case, and review of the contacts of the suspects involved, Arjona concluded the individuals involved were "gang members and that this was an intimidation shooting against a rival gang member. And a person who was caught in crossfire was also struck." He further opined the offense fits within the pattern of Norteño street gang activity in Tulare County. The People then introduced the certified conviction packet for *People v. Adrian Esquer*, No. VCF263049B for convictions of attempted murder and assault with a firearm, conviction date of January 31, 2014.

Arjona testified he reviewed contacts law enforcement had with Nava. Based upon his evaluation of set gang criteria, Officer Arjona testified, based upon his knowledge, training, experience, and investigation of the case, he believed Nava was a Norteño gang member on February 3, 2018, when the shooting at E.D. and C.A. occurred. He explained it was not common to see someone who associates with Sureños to start associating with Norteños. The fact Nava and his family moved from Dinuba to Visalia could have affected his affiliation.

***Prior Contacts***

Officer Dirk Alfano conducted a field interview with Nava on February 24, 2010. Nava stated he affiliated with a subset of a Sureño gang out of Dinuba called Brown

Pride Mexican. Nava had a "BPM" tattoo on his chest. He reported that his brother, with whom Nava did not get along, was a Norteño.

On April 13, 2010, officer Josh Speer conducted a field interview with Nava after learning Nava had thrown items, including a rock, at a security guard at the juvenile counseling center. Speer testified Nava identified himself as a Sureño from Dinuba.

In December 2010, Officer George Weaver contacted Nava at his home and conducted a probation search. Nava denied any gang affiliation.

On February 9, 2013, Officer Alfano encountered Nava again after initiating a traffic enforcement stop of a speeding car; the car eventually stopped in front of Nava's house after running three stop signs. Nava was driving the car; Norteño associates Ryan R. and Christian C. were in the backseat. Officer Alfano testified, based upon his knowledge, training, and experience in the gang unit, he knew Nava to be a Norteño gang member at that time.

Officer Michael Elliot also testified regarding his prior contacts with Nava. In the evening of February 9, 2013, Officer Elliot responded to a disturbance at Nava's house. Family members and gang members were present including North Side Visa Boys members Christian C. and Cixto M.

On April 11, 2017, Officer Elliot was involved in an investigation into a shooting that occurred at Nava's house between Nava's brother and several members of the Oriental Troop street gang. Nava's brother was arrested and police searched the house; Nava was present at the time. Officer Elliot described Nava's house as a "frequent Norteño hangout." He had encountered "different sets of Norteño gangs or gang members at that house," including individuals from North Side Varrio Locos, Youngsters, North Side Visa Boys, and North Side Visa. Detective Jacob Sorensen executed a search warrant at the house. He, too, encountered Nava. Nava informed him there were two firearms in his room (the firearms were registered). Nava denied being an active gang member but reported he affiliated with Norteños.

7.

The People also introduced testimony about the other codefendants' prior contacts with law enforcement, focusing on incidents that had gang-related circumstances.

*Verdict and Sentencing*

The jury acquitted all four defendants of attempted murder of E.D. and C.A. (counts 1 and 2, respectively) and was deadlocked on the lesser included offense of attempted voluntary manslaughter. The jury convicted all four defendants of shooting into an occupied motor vehicle in violation of section 246 (count 3) and found true allegations a principal used a firearm (§ 12022.53, subds. (c) & (e)(1)) and that the offense was committed for the benefit of a criminal street gang (former § 186.22, subd. (b)(1)(C)). The jury was deadlocked as to all four defendants on count 4, criminal street gang conspiracy in violation of section 182.5.

The jury convicted Lopez and Perez of battery in violation of section 242 in count 5 and found the offense was committed for the benefit of a criminal street gang (former § 186.22, subd. (b)(1)(C)). The jury convicted Lopez of possession of a firearm by a convicted felon in violation of section 29800, subdivision (a)(1) (count 6).

On February 26, 2020, the court sentenced Nava to 15 years to life in prison for count 3.

## DISCUSSION

### I. Nava Is Entitled to Reversal of His Gang Enhancement Under Assembly Bill 333

In supplemental briefing, Nava argues the imposed criminal street gang enhancement must be reversed as a result of changes made to section 186.22 by the recent enactment of Assembly Bill 333. The People agree. We also conclude Nava is entitled to reversal of his gang enhancement under Assembly Bill 333.

#### A. Assembly Bill 333

While Nava's appeal was pending, the Legislature enacted Assembly Bill 333, the STEP Forward Act of 2021, which, in part, amends section 186.22 to impose new

substantive and procedural requirements for gang enhancements. The Legislation went into effect on January 1, 2022.

First, Assembly Bill 333 amended the definition of a "'criminal street gang,'" requiring proof that the gang is an *organized* association, whose members *collectively* engage in, or have engaged in, a pattern of criminal activity (§ 186.22, subd. (f)). Next, the law created a stricter requirement for proof of "a pattern of criminal gang activity," which is necessary to prove that the group with which the defendant is associated is indeed a criminal street gang. (See § 186.22, subds. (e)–(f).) Previously, the prosecution needed to prove only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another. (See former § 186.22, subd. (e).) Under the newly amended law, the offense with which the defendant is currently charged cannot be used as one of the two predicate offenses. (§ 186.22, subd. (e)(2).) In addition, both predicate offenses must have been committed "within three years of the date the current offense is alleged to have been committed," by gang "members," and must have been for the "common[] benefit[] [of] a criminal street gang." (§ 186.22, subd. (e)(1).) Assembly Bill 333 also narrowed the list of offenses that may be used to establish a pattern of criminal gang activity (compare former § 186.22, subd. (e)(1)–(33) with current § 186.22, subd. (e)(1)(A)–(Z)). Additionally, it defines "to benefit, promote, further, or assist" throughout section 186.22 to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational." (*Id*., subd. (g).) The legislation notes examples of a common benefit that are more than reputational "may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (*Ibid*.)

Finally, Assembly Bill 333 adds section 1109, which requires gang enhancements charged under section 186.22, subdivision (b) or (d) to be tried separately from the underlying charges upon request from the defense. (Stats. 2021, ch. 699, § 5.) Section

9.

1109 also requires the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)) to be tried separately from all other counts that do not require gang evidence as an element of the crime.

## B.    The Amendments to Section 186.22 Apply Retroactively and Nava is Entitled to Reversal of His Gang Enhancement

First, the parties agree Assembly Bill 333's amendments to section 186.22 that alter the substantive requirements necessary to prove a gang enhancement operate retroactively. Because the legislation increased the evidentiary burden necessary to prove a gang-related enhancement, we agree it was an ameliorative change in the law that applies retroactively to cases not yet final on appeal.

Ordinarily, "a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).) However, in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), our Supreme Court recognized an exception to this rule. The court explained that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id*. at p. 745.)

In subsequent years, the California Supreme Court has applied this doctrine broadly "to statutes changing the law to the benefit of defendants." (*Tapia, supra*, 53

10.

Cal.3d at p. 301; see generally *People v. Frahs* (2020) 9 Cal.5th 618, 631–632 [pretrial diversion statute is retroactive because it provides possible benefit to class of criminal defendants, does not contain express savings clause, and Legislature did not signal its intent to overcome *Estrada* inference]; *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 309 ["Proposition 57 is an 'ameliorative change[] to the criminal law' that we infer the legislative body intended 'to extend as broadly as possible'"].)

Most relevant to this case, the Supreme Court in *Tapia* held the presumption of retroactivity applies to laws that change the substantive requirements for an enhancement in a defendant's favor. (See *Tapia, supra*, 53 Cal.3d at pp. 300–301.) In *Tapia*, the electorate had recently passed an initiative requiring proof of intent to kill for certain special circumstance allegations. (*Ibid.*) Because the initiative "redefine[d], to the benefit of defendants, conduct subject to criminal sanctions," the court held the initiative applied retroactively. (*Id.* at p. 301.)

Like in *Tapia*, because Assembly Bill 333's substantive changes to section 186.22 "redefine, to the benefit of defendants, conduct subject to criminal sanctions," these changes apply retroactively to all cases—like Nava's—in which the judgment of conviction is not yet final. (*Tapia, supra*, 53 Cal.3d at p. 301; accord, *People v. Sek* (2022) 74 Cal.App.5th 657, 667 [concluding Assem. Bill 333's amendments to § 186.22 "'redefine[d], to the benefit of defendants, conduct subject to criminal sanctions' [citation], and it therefore applies retroactively under *Estrada*"]; *People v. E.H.* (2022) 75 Cal.App.5th 467, 478 [similar]; see *People v. Lopez* (2021) 73 Cal.App.5th 327, 344 [concluding substantive changes in Assem. Bill 333 apply retroactively because they "increase[] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement"]; *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822 [same].)

And here, it is undisputed Nava is entitled to reversal of the gang enhancement on this basis; that is, neither party argues, nor can we conclude, the evidence presented at trial was sufficient to sustain the gang enhancement under the revised requirements of

11.

section 186.22. At trial, the prosecution introduced evidence of two cases committed in 2010 and 2012 as evidence of the predicate offenses necessary to establish a pattern of criminal gang activity. Neither predicate offense occurred within three years of the date the currently charged offense was committed—February 3, 2018—as required by amended section 186.22. (§ 186.22, subd. (e)(1).)

Excluding evidence of these offenses, the existing record is insufficient to support the heightened evidentiary requirements set forth by amended section 186.22 following the enactment of Assembly Bill 333. As a result, the criminal gang enhancement applied to Nava's sentence must be reversed. However, the People are not foreclosed from retrying Nava on the gang enhancement upon remand under the new requirements of amended section 186.22. Put differently, "'[b]ecause we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial.'" (*People v. Sek*, *supra*, 74 Cal.App.5th at p. 669; accord, *People v. Figueroa* (1993) 20 Cal.App.4th 65, 72 ["Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence"]; see *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand"].) In so concluding, we reject Nava's argument that because the introduced evidence of the predicate crimes is no longer sufficient to establish a pattern of criminal gang activity under the amended statute, the People should be barred from retrying him and introducing additional evidence to prove the predicate offenses within the parameters of the new law. (See *People v. Figueroa*, *supra*, at pp. 71–72 & fn. 2 [remand appropriate to allow prosecution to establish additional element retroactively added by statutory amendment; no violation of the double jeopardy clause or constitutional restrictions against ex post facto

legislation]; accord *People v. Lopez*, *supra*, 73 Cal.App.5th at pp. 346–348 [vacating enhancements in light of Assem. Bill 333 and remanding for limited retrial]; *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1033 [same].)

## II. Nava's Firearm Enhancement Must be Reversed

In his opening brief, Nava asserted the court should have struck instead of stayed the section 12022.53 gang-related firearm enhancement. In his supplemental brief, Nava argues this firearm enhancement should be reversed under Assembly Bill 333. We conclude this gang-related enhancement must also be reversed because of our reversal of the section 186.22, subdivision (b) enhancement.

### A. Standard of Review and Applicable Law

Section 12022.53 provides for sentence enhancements for persons convicted of certain enumerated felonies who use a firearm during the commission of the crime. A violation of section 246 is not one of the felonies enumerated in subdivision (a) of section 12022.53. However, a section 12022.53 enhancement may apply under subdivision (a)(17) of that section, where the penalty has been elevated to a life term through application of an alternate penalty provision. (*People v. Jones* (2009) 47 Cal.4th 566, 569, 579; accord, *People v. Brookfield* (2009) 47 Cal.4th 583, 590–591.)

Section 12022.53, subdivision (e)(1) extends liability to aiders and abettors where "the prosecution has both 'pled and proved' that the defendant committed a felony on behalf of a street gang (see … § 186.22) and that a 'principal in the offense committed any act specified in subdivision (b), (c), or (d)'—that is, an act that would trigger a firearm enhancement had the defendant committed that act personally. (§ 12022.53(e)(1).)" (*People v. Anderson* (2020) 9 Cal.5th 946, 953.) Section 12022.53, subdivision (e)(2) states:

> "An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to

this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

In *Brookfield*, the California Supreme Court held "the trial court may not impose the sentence enhancement under section 12022.53 *in addition to* a life term under section 186.22(b)(4)." (*People v. Brookfield*, *supra*, 47 Cal.4th at p. 592.) Rather, a defendant who was an accomplice to a gang-related offense specified in section 12022.53 in which, as here, another principal, not the defendant, personally used or discharged a firearm is "subject to additional punishment under *either* section 12022.53 *or* the gang-related sentence increases under section 186.22, but not *both*." (*Brookfield*, at p. 594.) The *Brookfield* court relied upon section 12022.53's subdivision (j) in determining the trial court should have imposed the greater penalty (the life term under § 186.22, subd. (b)(4)), rather than the lesser punishment (the 10-year sentence enhancement under § 12022.53's subds. (b) & (e)(1)). (*Brookfield*, at p. 596.) That provision states in part: "When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other provision of law, *unless another enhancement provides for a greater penalty or a longer term of imprisonment.*" (§ 12022.53, subd. (j), italics added.) Because the *Brookfield* court held the trial court erred in sentencing the defendant to both the life term under section 186.22, subdivision (b)(4) and the 10-year sentence enhancement under subdivisions (b) and (e)(1) of section 12022.53, it affirmed the decision of the Court of Appeal striking the 10-year sentence enhancement. (*People v. Brookfield*, *supra*, 47 Cal.4th at p. 597.)

In *People v. Gonzalez* (2008) 43 Cal.4th 1118 (*Gonzalez*), the California Supreme Court concluded the word "impose" used throughout section 12022.53 "must be interpreted as shorthand for 'impose and then execute' to make sense." (*Gonzalez*, at p. 1127.) The *Gonzalez* court rejected an interpretation of section 12022.53, subdivision (f)—which prohibits the imposition of enhancements pursuant to certain other sections in addition to an enhancement imposed pursuant to that section—"that would have the trial

14.

court strike, rather than stay, the prohibited firearm enhancements." (*Ibid*.) The court explained, this is "because the rules of statutory construction mandate that we interpret the statute in a manner that does not create unnecessary disharmony between subdivision (f) and subdivision (h) of section 12022.53." (*Id*. at pp. 1127–1128.) The *Gonzalez* court noted, requiring a court to strike rather than stay the prohibited enhancements would "mak[e] it more difficult, if not impossible, to impose and execute the term of imprisonment for an initially prohibited firearm enhancement in the event the section 12022.53 enhancement with the longest term of imprisonment is invalidated on appeal." (*Id*. at p. 1128.)

### B. Analysis

Nava argues the court erred, pursuant to section 12022.53, subdivision (e)(2), in imposing and staying the firearm enhancement. He argues this section prohibits the imposition of both the firearm enhancement and a gang enhancement unless the defendant was the actual shooter. The People respond the court did not err in imposing and staying the firearm enhancement, relying on *Gonzalez, supra*, 43 Cal.4th 1118, but they agree Nava is entitled to reversal of this enhancement under Assembly Bill 333. They further contend the prosecution should be afforded an opportunity to retry this gang-related enhancement. We conclude Nava is entitled to reversal of this enhancement under Assembly Bill 333.

We have already concluded Nava's gang enhancement imposed pursuant to section 186.22 must be reversed. Because the imposed section 12022.53 enhancement applied to Nava under subdivision (a)(17) of that section only because his penalty had been elevated to a life term through application of the alternate penalty provision provided for in section 186.22, the section 12022.53 enhancement is no longer supported. Additionally, because the section 12022.53 enhancement depends on a finding the principal violated section 186.22, subdivision (b), and we vacate that finding as discussed *ante*, the changes to section 186.22 made by Assembly Bill 333 require that the imposed

15.

firearm enhancement must be vacated. (See *People v. Lopez*, *supra*, 73 Cal.App.5th at p. 348 [vacating firearm enhancement based on gang-related enhancement findings in light of Assem. Bill 333 and remanding for limited retrial]; *People v. Vasquez*, *supra*, 74 Cal.App.5th at p. 1033 [same].) On remand, the prosecution may also seek to retry this gang-related enhancement. Because we strike the enhancement on other grounds, we do not address Nava's arguments further.

## DISPOSITION

The section 186.22, subdivision (b) gang enhancement and the section 12022.53 firearm enhancement are reversed. The matter is remanded to the trial court for further proceedings. The People shall have 60 days from the date of the remittitur in which to file an election to retry Nava on these enhancements. If the People elect not to retry him, the trial court shall modify the judgment by striking the enhancements and shall resentence Nava accordingly. Following the conclusion of proceedings, the court shall amend the abstract of judgment in a manner consistent with this disposition and forward copies of the amended abstract to the appropriate law enforcement and custodial officials. In all other respects, the judgment is affirmed.

PEÑA, Acting P. J.

WE CONCUR:


SMITH, J.


DE SANTOS, J.

16.